IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

UNITED STATES OF AMERICA,

*Plaintiff*,

v.

HATRATICO SMITH,

*Defendant*.

Crim. No. ELH-12-0528
Related Civil No.: ELH-15-457

**MEMORANDUM OPINION**

On September 6, 2013, Hatratico Smith pleaded guilty to conspiracy to interfere with commerce by robbery ("Hobbs Act Robbery"), in violation of 18 U.S.C. § 1951(a), and brandishing a firearm in furtherance of a crime of violence, in violation of 18 U.S.C. § 924(c). *See* ECF 95; ECF 96.  The guilty pleas were entered pursuant to Fed. R. Crim. P. 11(c)(1)(C). ECF 96; *see also* ECF 145-1.  In accordance with the terms of the "C plea," Smith was sentenced on February 11, 2014, to a total term of incarceration of 300 months.  *See* ECF 113; ECF 119. No appeal was taken.

Pursuant to 28 U.S.C. § 2255, on February 18, 2015, Smith filed, under oath, a Motion to Vacate, Set Aside, or Correct Sentence (the "Petition") alleging ineffective assistance of counsel. ECF 133.  The government has filed a response in opposition ("Opposition"), supported by exhibits, claiming the Petition fails on the merits.  ECF 145.

The Petition has been fully briefed.  Section 2255(b) requires a hearing, "[u]nless the motion and the files and records conclusively show that the prisoner is entitled to no relief . . . ." A hearing is generally "required when a movant presents a colorable Sixth Amendment claim

showing disputed material facts and a credibility determination is necessary to resolve this issue." *United States v. Robertson*, 219 F. App'x 286, 286 (4th Cir. 2007); *see also United States v. Ray*, 547 F. App'x 343, 345 (4th Cir. 2013) ("An evidentiary hearing in open court is required when a movant presents a colorable Sixth Amendment claim showing disputed facts beyond the record or when a credibility determination is necessary in order to resolve the issue.") (citing *United States v. Witherspoon*, 231 F.3d 923, 926-27 (4th Cir. 2000)).  "When the issue is one of credibility, resolution on the basis of affidavits can rarely be conclusive . . . ." *Raines v. United States*, 423 F. 2d 526, 530 (4th Cir. 1970).  *See, e.g., United States v. White*, 366 F.3d 291, 302 (4th Cir. 2004) (holding that the record is unclear regarding alleged promises made by the government to the petitioner, and therefore an evidentiary hearing on the question must be held).

No hearing is necessary as to Smith's claim of ineffective assistance of counsel at the plea-negotiations stage.  For the reasons that follow, I will deny the Motion as to that claim. However, as to the claim of ineffective assistance of counsel for alleged failure to file an appeal, a hearing is necessary to determine whether Smith asked counsel during the appeal period to file an appeal, as he contends.

## FACTUAL BACKGROUND

Smith and two co-defendants were indicted on October 4, 2012, and charged with various offenses relating to multiple armed robberies of convenience stores.  ECF 22.  Smith discharged the gun during two robberies, including on February 21, 2012, when Smith shot a customer in the abdomen.  *Id.*  On March 28, 2013, a forty-seven count Superseding Indictment was filed

against Smith (ECF 73), but not his two co-defendants.[1]  ECF 73; ECF 74; ECF 75.  The charges against Smith included, *inter alia*, conspiracy to obstruct commerce by robbery, between January 22, 2012, and June 11, 2012, in violation of 18 U.S.C. § 1951 (Count One); conspiracy to possess firearms in furtherance of crimes of violence, *i.e.*, conspiracy to interfere with commerce by robbery, in violation of 18 U.S.C. §§ 924(c) and 2 (Count Two); brandishing and discharging a firearm on January 22, 2012, in furtherance of a crime of violence, to wit: conspiracy to interfere with commerce by robbery, in violation of 18 U.S.C. §§ 924(c) and 2 (Count Four); brandishing and discharging a firearm on January 24, 2012, in furtherance of a crime of violence, *i.e.*, conspiracy to interfere with commerce by robbery, in violation of 18 U.S.C. §§ 924(c) and 2 (Count Six); robbery of Pepe's Pizza on January 26, 2012 (Count Seven); brandishing and discharging a firearm on June 11, 2012, in furtherance of a crime of violence (*i.e.*, Count One), in violation of 18 U.S.C. §§ 924(c) and 2 (Count Forty-Six); and multiple other charges of robbery and brandishing.  *Id.*

Thereafter, Smith entered into a plea agreement with the government, set forth in a letter dated September 3, 2013 ("Plea Agreement").  ECF 95; ECF 96 (Plea Agreement); ECF 97; ECF 145-1 (Plea Agreement).  The Statement of Facts was appended to the Plea Agreement as Attachment A (ECF 96 at 9-20; ECF 145-1 at 9-20).  It outlined twenty-two armed robberies committed by Smith and his co-defendants during the period from January 2012 to June 2012.

---

[1] Both co-defendants pleaded guilty to various charges.  *See* ECF 62 (Monzel Lee); ECF 63 (Rico Bias).  The electronic version of the Superseding Indictment (ECF 73) does not contain Count Nine.  However, the Red-Lined version (ECF 75) does contain Count Nine.  Smith was arraigned on all forty-seven counts on April 12, 2013.  ECF 77.  Thus, it appears that the page of the Superseding Indictment that contains Count Nine was inadvertently omitted in the electronic filing.  (The pages are only numbered electronically).  In any event, Count Nine is not material here.

The Statement of Facts further reflected that Smith brandished a firearm and discharged it on two occasions. *Id.* at 9. In one incident, on February 21, 2012, Smith shot a customer in the abdomen at a Royal Farms. *Id.* at 13.

Smith tendered guilty pleas on September 6, 2013, to two out of forty-seven counts: conspiracy to interfere with commerce by robbery, in violation of 18 U.S.C. § 1951(a) (Count One), and brandishing a firearm on June 11, 2012, in connection with the robbery of a Wendy's Restaurant, in furtherance of a crime of violence, in violation of 18 U.S.C. §§ 924(c) and 2 (Count Forty-Six).[2] ECF 96; ECF 145-1; *see also* ECF 145-2 (rearraignment proceeding).

As set forth in the Plea Agreement, and then as explained to Smith at the rearraignment, Count One carried a maximum sentence of 20 years' incarceration, while Count Forty-Six (Superseding Indictment) carried a maximum sentence of life imprisonment, with a mandatory minimum term of seven years' imprisonment, consecutive to any other sentence. ECF 96 ¶ 3.[3] In the Plea Agreement (ECF 96; ECF 145-1), the parties agreed that Smith is a career offender under U.S.S.G. § 4B1.1(a). *Id.* ¶¶ 6(a), 7. They also agreed that, pursuant to U.S.S.G.

---

[2] The docket (ECF 95) and the rearraignment transcript (ECF 145-2 at 3) reflect that defendant pleaded guilty to Counts One and Forty-Six. However, the Plea Agreement, as typed, indicated that the defendant was pleading guilty to Count One and to Count Four. ECF 96 ¶ 1; ECF 145-1 ¶ 1. At the rearraignment, the Plea Agreement was corrected by hand to change Count Four to Count Forty-Six, and initialed by Smith. *See* ECF 96 ¶1, ¶2. Count Four of the original Indictment and Count Forty-Six of the Superseding Indictment are identical; only the count number was changed. ECF 22 at 5; ECF 73 at 46. At the rearraignment, I sometimes referred inadvertently to Count Four, rather than to Count Forty-Six, because I was referencing the original Plea Agreement, which referred to Count Four. *See*, *e.g.*, ECF 145-2 at 8-9.

[3] *See* note 2.

- 4 -

§§ 4B1.1(b) and 4B1.1(c)(2)(A), Count One had a base offense level of 32,[4] and that Smith had a criminal history category of VI.  *Id.* ¶ 6(a).

The guilty pleas were entered pursuant to Fed. R. Crim. P. 11(c)(1)(C).  ECF 96 ¶ 14; ECF 145-1 ¶ 14.  The parties agreed as follows: a sentence of 180 months' incarceration as to Count One; a consecutive term of 120 months as to Count Forty-Six; and a total sentence of 300 months' incarceration.  *Id.* ¶¶ 6, 9; *see also* ECF 145-2 at 17-18.[5]

Paragraph 11 of the Plea Agreement is titled "Waiver of Appeal."  Smith generally waived all of his appellate rights.  However, he reserved the right to appeal any sentence to the extent it exceeded 300 months' incarceration.  ECF 96 ¶ 11(b); ECF 145-1 ¶ 11(b); ECF 145-2 at 19.

Sentencing was held on February 11, 2014.  ECF 126.  Pursuant to the terms of the C plea, Smith was sentenced to 180 months' incarceration on Count One and to a consecutive term of 120 months on Count Forty-Six, for a total sentence of 300 months' imprisonment.  ECF 113; ECF 119.  Judgment was entered on February 12, 2014 (ECF 113; ECF 114), followed by an Amended Judgment entered on March 19, 2014.  ECF 119; ECF 120.  The time for filing an appeal expired fourteen days after entry of judgment.  Fed. R. App. P. 4(b)(1)(A).  Smith did not note an appeal.  Thus, Smith's conviction became final upon the expiration of the time for filing a notice of appeal.  *United States v. Clay*, 537 U.S. 522, 531 (2003); *United States v. Wilson*, 256 F.3d 217, 221 (4th Cir. 2001).

---

[4] With upward and downward adjustments, including related conduct and multiple count adjustments, the final offense level for Count One was 34.  ECF 126 at 10.

[5] As noted, the Plea Agreement, as initially drafted, referred to Count Four.  But, the parties changed Count Four (Indictment) to Count Forty-Six (Superseding Indictment).  Both counts are substantively the same.

Smith filed this Petition on February 18, 2015 (ECF 133), supported by a Memorandum of Law.  ECF 133-1.  He presents two claims of ineffective assistance of counsel.

First, Smith asserts that he received ineffective assistance during plea negotiations.  ECF 133-1 at 2.  He complains that his attorney advised him that, under the Plea Agreement, he faced a maximum term of imprisonment of 262 months for both counts, not 300 months.  *Id.* at 3.  Second, Smith claims that his attorney failed to file a direct appeal, even though Smith and his wife requested such action at the conclusion of the sentencing hearing.  *Id.* at 7.  According to Smith, his lawyer, an Assistant Federal Public Defender, told Smith he had no right to appeal.  *Id.*

Additional facts are included in the Discussion.

## DISCUSSION

### A.  The Standard

To challenge successfully a conviction or sentence under § 2255 based on a Sixth Amendment claim of ineffective assistance of counsel, a petitioner must satisfy the two-prong test set forth in the seminal case of *Strickland v. Washington*, 466 U.S. 668 (1984).  *See, e.g., United States v. Higgs*, 663 F.3d 726, 735 (4th Cir. 2011) ("To succeed on a Sixth Amendment claim of ineffective assistance of counsel, the defendant must satisfy the two-prong test set forth in *Strickland.*");  *see also Roe v. Flores-Ortega*, 528 U.S. 470, 477 (2000);  *United States v. Rangel*, 781 F.3d 736, 742 (4th Cir. 2015);  *Gordon v. Braxton*, 780 F.3d 196, 200 (4th Cir. 2012);  *Yarbrough v. Johnson*, 510 U.S. 327, 337 (4th Cir. 2008).  *See generally Missouri v. Frye*, ____ U.S. ____, 132 S. Ct. 1399 (2012);  *Laffler v. Cooper*, ____ U.S. ____, 132 S. Ct. 1376 (2012);  *Padilla v. Kentucky*, 559 U.S. 356 (2010).

Generally, a petition filed by a self-represented litigant is liberally construed. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007). Nevertheless, the burden is on the petitioner to establish, by a preponderance of the evidence, that "'counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed by the Sixth Amendment.'" *Harrington v. Richter*, 562 U.S. 86, 104 (2011) (quoting *Strickland*, 466 U.S. at 687); *see United States v. Rogers*, WMN-09-467, 2013 WL 5740476, at *5-6 (D. Md. Oct. 22, 2013).

Under the *Strickland* two-prong test, the petitioner must show that his attorney's performance fell "below an objective standard of reasonableness," measured by "prevailing professional norms." *Strickland*, 466 U.S. at 688. This is known as the "performance prong" of the test. The performance prong of the *Strickland* test relates to professional competence.

"Keenly aware of the difficulties inherent in evaluating counsel's performance, the Supreme Court has admonished that courts 'must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance.'" *Lawrence v. Branker*, 517 F.3d 700, 708 (4th Cir. 2008) (quoting *Strickland*, 466 U.S. at 689). *See also Lee v. Clarke*, 781 F.3d 114, 122 (4th Cir. 2015). Indeed, the Fourth Circuit has recognized that the performance prong is "difficult" to establish. *Lawrence*, 517 F.3d at 709 (quoting *James v. Harrison*, 389 F.3d 450, 457 (4th Cir. 2004)).

In order to avoid the "distorting effects of hindsight," judicial scrutiny is "highly deferential" as to counsel's performance. *Strickland*, 466 U.S. at 689. Thus, "the *Strickland* standard must be applied with scrupulous care." *Harrington v. Richter*, 562 U.S. 86, 105, 131 S. Ct. 770, 788 (2011). The central question is whether "an attorney's representation amounted to

incompetence under 'prevailing professional norms,' not whether it deviated from best practices or most common custom." *Id.* (quoting *Strickland*, 466 U.S. at 690).

Under the second prong, the petitioner must show that his attorney's deficient performance "prejudiced [his] defense." *Strickland*, 466 U.S. at 687. To satisfy the "prejudice prong," a petitioner must demonstrate that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. "A reasonable probability is a probability sufficient to undermine confidence in the outcome" of the proceedings. *Id.* at 694. Notably, there can be no post-conviction relief based on attorney error where the record establishes that it is "not reasonably likely that [the alleged error] would have made any difference in light of all the other evidence of guilt." *Berghuis v. Thompkins*, 560 U.S. 370, 390 (2010).

A court "need not determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant as a result of the alleged deficiencies." *Strickland*, 466 U.S. at 697. Nor must a court address both components if one is dispositive. *Jones v. Clarke*, 783 F.3d 987, 991 (4th Cir. 2015). Failure to satisfy either prong is fatal to a petitioner's claim. As a result, "there is no reason for a court . . . to address both components of the inquiry if the defendant makes an insufficient showing on one." *Strickland*, 466 U.S. at 697.

### A.  Plea Negotiations

The first of Smith's claims of ineffective assistance of counsel is in regard to defense counsel's alleged misrepresentation of the Plea Agreement. According to Smith, his attorney told him that the total term of imprisonment under the C plea was 262 months, rather than 300 months.

The Sixth Amendment right to counsel extends to the plea-bargaining process. *McMann v. Richardson*, 392 U.S. 749, 771 (1970). In *Hooper v. Garraghty*, 845 F.2d 471 (4th Cir. 1988), the Fourth Circuit described a defendant's burden in a post-guilty plea claim of ineffective assistance of counsel. The Court said, *id.* at 475 (quoting *Hill v. Lockhart*, 474 U.S. 52, 59 (1985)):

> When a defendant challenges a conviction entered after a guilty plea, [the] "prejudice" prong of the [*Strickland*] test is slightly modified. Such a defendant "must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial."

*Accord Fields v. Attorney Gen. of Md.*, 956 F.2d 1290, 1294-99 (4th Cir. 1992).

In *Hill*, the Supreme Court explained that, "where . . . a defendant is represented by counsel during the plea process and enters his plea upon the advice of counsel, the voluntariness [and intelligence] of the plea depends on whether counsel's advice 'was within the range of competence demanded of attorneys in criminal cases.'" 474 U.S. at 56 (citing *McMann v. Richardson*, 397 U.S. 759, 771 (1970)). As noted, in assessing whether counsel's performance was deficient, courts adopt a "strong presumption" that counsel's actions fell within the "wide range of reasonable professional assistance." *Strickland*, 466 U.S. 689.

In *Hooper*, 845 F.2d 471, the defendant pled guilty in a Virginia court to second-degree murder. *Id.* at 472. Although he had a history of mental illness, Hooper's lawyers failed to obtain a psychiatric evaluation before his entry of the guilty plea. *Id.* Hooper subsequently filed a habeas corpus petition, which the federal district court denied. On appeal, the Fourth Circuit noted that the "burden is on Hooper to establish a reasonable probability that if his lawyers had obtained a psychiatric report, he would have rejected the plea agreement" and gone to trial. *Id.* at 475.

- 9 -

The Fourth Circuit examined a psychiatric report obtained after the guilty plea against the background of the circumstances Hooper faced at the time he decided to plead guilty. It was not persuaded that the report provided evidence sufficient to establish a reasonable probability that Hooper would have declined the plea agreement and gone to trial, even if his counsel had obtained a psychiatric report at the relevant time. *Id.* at 475-76. Although the Court concluded that the failure to obtain a psychiatric report fell below the objective standard of reasonableness established by *Strickland*, it was satisfied that Hooper was not prejudiced because there was no reasonable probability that the deficiency changed the outcome of the proceeding. *Id.*

With the *Strickland* standard in mind, I turn to Smith's guilty plea colloquy of September 6, 2013. At the outset, Smith was sworn. ECF 145-2 at 2. Thereafter, I reminded Smith that he was under oath, *id.* at 4:

> THE COURT: Let me also make sure you realize that you just took an oath to tell the truth, and that obligates you to answer my questions truthfully, and, if you were to fail to do so, it's possible you would be subjecting yourself to further charges on crimes such as perjury or false statement. Do you understand?
>
> THE DEFENDANT: Yes, I do.

The Plea Agreement reflects that Smith signed it on September 4, 2013 (ECF 96 at 8; ECF 145-1 at 8), just below the following statement, in part:

> I have read this agreement . . . and carefully reviewed every part of it with my attorney. I understand it, and I voluntarily agree to it. Specifically, I have reviewed the Factual and Advisory Guidelines Stipulation with my attorney, and I do not wish to change any part of it. I am completely satisfied with the representation of my attorney.

During the plea colloquy, in response to the Court's inquiry, the defendant indicated that the statement set forth above was true and accurate. ECF 145-2 at 7 (Transcript).

In addition, as noted, the Plea Agreement included Attachment A, the Statement of Facts. ECF 96 at 9-20; ECF 145-1 at 9-20.  Smith signed his name below the following statement:  "I have read the Statement of Facts and carefully reviewed every part of it with my attorney.  I understand it, and I voluntarily agree to it.  I am completely satisfied with the representation of my attorney."  ECF 96 at 20; ECF 145-1 at 20.

During Smith's guilty plea colloquy, Smith also indicated that he understood that he tendered a plea of guilty to Count One and to Count Forty-Six.  ECF 145-2 at 8-10.  At the plea hearing, the following exchange occurred, ECF 145-2 at 16-17:

> THE COURT:  Now, Mr. Smith, this is what we sometimes call a (c) plea.  That is a shorthand reference to a rule of the Federal Rules of Criminal Procedure, specifically Rule 11(c)(1)(C), and, under the terms of this (c) plea, the parties – you and the Government and your lawyer – have agreed to a sentence of 180 months' incarceration as to Count 1, and a consecutive sentence of 120 months' incarceration as to Count 4 [sic], for a total sentence of 300 months in prison in the Bureau of Prisons as the appropriate disposition.  Is that a correct statement?
>
> THE DEFENDANT:  Yes, ma'am.

The Court continued, ECF 145-2 at 22:

> THE COURT:  Paragraph 15, sir, tells you that this plea agreement is your entire plea agreement, so, if you think something else was promised to you and it's not in this plea agreement, then it is not part of your plea agreement, and you can't claim that it is.  Do you realize that?
>
> THE DEFENDANT:  Yes, ma'am.

Thereafter, the Assistant United States Attorney provided an extensive summary of the facts that the government would have proven, beyond a reasonable doubt, if the case had proceeded to trial.  ECF 145-2 at 31-50.  He also incorporated Attachment A, the Statement of Facts appended to the Plea Agreement.  ECF 145-2 at 31.  The facts reflect that the firearm was brandished during twenty-two robberies and, "on two occasions, discharged, with one resulting

in the shooting of a customer on February 21, 2012, at the Royal Farms store on Harford Road." *Id.* at 33.  Although Smith denied the commission of a handful of the twenty-two robberies listed in the Statement of Facts, he otherwise agreed with the factual summary.  ECF 145-2 at 50.[6] Indeed, he expressly agreed that he committed the crimes as summarized by the government.  *Id.* And, he indicated that he was pleading guilty freely and voluntarily, and because he was guilty. *Id.* at 51.

Sentencing was held on February 11, 2014.  Early in the sentencing proceeding, I said: "And I am also mindful that the plea was entered pursuant to Rule 11(c)(1)(C), by which the parties agreed to . . . a total sentence of 300 months' incarceration."  ECF 126 at 3.  No challenge was lodged to dispute the accuracy of what I said.

Thereafter, I proceeded to calculate the advisory sentencing guidelines range.  As to Count One, I determined that defendant's final offense level was 34 and his criminal history category was VI.  ECF 126 at 10-11.  Based on the total of defendant's criminal history points -- 23 -- his criminal history category was VI, whether or not he was designated as a career offender. ECF 126 at 11.

Based on an offense level of 34 and a criminal history category of VI the advisory guideline calculation for Count One called for a total sentence of imprisonment ranging from 262 months to 327 months.  *Id.* at 12.  But, because Count One has a statutory maximum sentence of 240 months' imprisonment (*i.e.*, 20 years), the guideline range for Count One was reduced to

---

[6] Smith denied the commission of the following robberies: a Pepe's Pizza on January 26, 2012 (ECF 95 at 34); a Shopper's Food Store on February 2, 2012 (ECF 95 at 35); a Shopper's Food Store on February 12, 2012 (ECF 95 at 37); a Royal Farms Store on February 2, 2012 (ECF 95 at 36); and a Burger King on February 21, 2012.  ECF 95 at 38.  He did not recall the robbery of a Royal Farms Store on May 15, 2012.  ECF 95 at 41.

240 months, under U.S.S.G. § 5G1.1(a).  *Id.*  In addition, the guideline range for Count Forty-Six was 84 months, consecutive.  *Id.*  Thus, under the guidelines, the advisory sentencing range totaled 292 to 365 months of imprisonment.  *Id.* at 32.

During the sentencing hearing, in evaluating the C plea, I said, in part:  "So I think this (c) plea, if anything, given the callous, brazen nature of defendant's conduct, is way more generous to [Mr. Smith] than would benefit the government."  ECF 126 at 33.  Moreover, I noted the government's view that if the defendant had been convicted of every firearms offense with which he was charged, he would have faced a mandatory sentence of 532 years.  *Id.*  And, I characterized as "reprehensible" the "non-stop, lawless crimes" committed by Smith.  *Id.*  I determined that, "from the defense point of view," the sentence of twenty-five years was "certainly very reasonable."  *Id.*  Again, the case involved twenty-two armed robberies.  And, during one of the robberies, defendant shot a customer in the abdomen, seriously wounding him.

According to the government, defense counsel disagrees with Smith's claim that defense counsel told Smith that he would receive a sentence of 262 months under the plea agreement. ECF 145 at 6 n.1.  But, it is not the practice of the Federal Public Defender's Office to provide affidavits in these cases.  *Id.*  Regardless, Smith's claim that his attorney misrepresented the terms of the Plea Agreement is completely belied by the record, as set forth above.

In *United States v. Lemaster*, 403 F.3d 216, 222 (4th Cir. 2005), the Court noted that, "in the absence of extraordinary circumstances, the truth of sworn statements made during a Rule 11 colloquy is conclusively established, and a district court should, without holding an evidentiary hearing, dismiss any § 2255 motion that necessarily relies on allegations that contradict the

sworn statements." Smith's statements at the plea colloquy, made under oath, reflect at a minimum that he knowingly and voluntarily agreed to the sentence of 300 months' incarceration.

Simply put, Smith has not met his burden of satisfying the *Strickland* test. As for the performance prong, Smith has not demonstrated that defense counsel's representation of Smith fell below "an objective standard of reasonableness." *Strickland*, 466 U.S. at 688. Defense counsel's performance in garnering a twenty-five-year sentence was the result of sound legal strategy. The sentence was far lower than the potential sentence Smith faced if he had gone to trial and had been convicted. And, the Statement of Facts reflected overwhelming evidence of Smith's guilt.

Nor has Smith satisfied the prejudice prong by showing that there was "a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Hooper*, 845 F.2d at 475. Smith has not provided any evidence to suggest that he would not have accepted the Plea Agreement had he realized it called for a period of incarceration of 300 months, rather than 262 months.

### B.  Post-Sentencing Appeal

Smith claims his attorney was ineffective for failing to file a notice of appeal following a timely request from Smith and his wife to do so.

At the end of the sentencing proceeding, I advised Smith of his appellate rights. ECF 126 at 38-39. Moreover, I said: "And I would ask counsel to confirm contact with [the defendant] during this time [*i.e.*, the appeal period] in case you [*i.e.*, Mr. Smith] do wish to exercise your right to appeal." *Id.* at 39. Smith asserts that he and his wife asked defense counsel at the end of the sentencing hearing "to file a notice of Appeal challenging the Judgment and conviction in

regards to the Due Process Violation of Petitioner rights [sic] . . . ." ECF 133-1 at 7. According to Smith, defense counsel responded that Smith "had no right to Appeal [sic]," and thereafter failed to file an appeal. *Id.*

In the Opposition to the § 2255 motion (ECF 145), the government noted that defense counsel disagrees with Smith's contention that Smith asked him to note an appeal. ECF 145 at 6 n.1. But, Smith's defense counsel has declined to provide an affidavit stating that he disagrees with Smith's allegations. *Id.* According to the government, defense counsel explained "that it was not the general practice of the Federal Defender's Office to do so." *Id.*

Beyond his own assertion, under oath, Smith has not provided any evidence to support his claim that he asked his attorney to file an appeal. For example, he has not furnished any correspondence or an affidavit from his wife. ECF 133 at 3.

Pursuant to a plea agreement, a defendant may waive his appellate rights under 18 U.S.C. § 3742. *See United States v. Archie*, 771 F.3d 217, 221 (4th Cir. 2014), *cert. denied*, ____ U.S. ____, 135 S. Ct. 1579 (2015); *United States v. Manigan*, 592 F.3d 621, 627 (4th Cir. 2010). If the waiver is valid and the issue is within the scope of the waiver, a waiver will preclude an appeal of "a specific issue . . . ." *Archie*, 771 F.3d at 221; *see United States v. Blick*, 408 F.3d 162, 168 (4th Cir. 2005). But, a waiver of appeal does not preclude consideration of a claim of ineffective assistance of counsel. *United States v. Brown*, ____ Fed. App'x ____, 2015 WL 2445290 at *1 (4th Cir. May 22, 2015) (per curiam).

A lawyer's failure to file an appeal after being asked to do so by his client constitutes ineffective assistance of counsel, regardless of the merits of the appeal. In *Roe v. Flores-Ortega*, 528 U.S. 470, 470 (2000), the Supreme Court said: "A lawyer who disregards a defendant's

specific instructions to file a notice of appeal acts in a professionally unreasonable manner."  The Supreme Court has also said that the "complete denial of counsel during a critical stage of a judicial proceeding . . . mandates a presumption of prejudice because 'the adversary process itself' has been rendered 'presumptively unreliable.'"  *Id.* at 471 (quoting *United States v. Cronic*, 466 U.S. 648, 659 (1984)).  According to the Court, "when counsel's constitutionally deficient performance deprives a defendant of an appeal that he otherwise would have taken, the defendant has made out a successful ineffective assistance of counsel claim."  *Id.* at 484; *see also Evitts v. Lucey*, 469 U.S. 387, 391–405 (1985); *Jones v. Barnes*, 463 U.S. 745, 751 (1983) (noting that the "fundamental decision" of whether to appeal rests not with counsel, but with the defendant).

*United States v. Poindexter*, 492 F.3d 263, 265 (4th Cir. 2007), is also pertinent.  There, the Fourth Circuit concluded that "an attorney renders constitutionally ineffective assistance of counsel if he fails to follow his client's unequivocal instruction to file a timely notice of appeal even though the defendant may have waived his right to challenge his conviction and sentence in the plea agreement."

As noted, Smith asserts under oath that he asked his lawyer to file an appeal.  Further, Smith claims that he submitted a sworn affidavit as Exhibit A to his § 2255 motion, ECF 133-1 at 7, although he did not do so.  To be sure, the government disputes Smith's assertions.  But, it did not secure an affidavit from the Assistant Federal Public Defender who represented Smith.  Nonetheless, even if the government had obtained an affidavit from defense counsel, contradicting Smith's assertions, I would be unable to make credibility determinations based on competing affidavits.

- 16 -

Because there is a dispute of material fact, "a credibility determination is necessary to resolve the issue." *United States v. Robertson*, 219 F. App'x 286, 286 (4th Cir. 2007). It follows that a hearing is required to resolve the dispute of a material fact, as its resolution depends on a credibility determination. *See id.*; *United States v. Witherspoon*, 231 F.3d at 925-27; *United States v. Peak*, 992 F.2d 39, 42 (4th Cir. 1993).

In light of the foregoing, I will hold an evidentiary hearing to determine whether Smith timely asked his lawyer to file an appeal after sentencing. I will appoint counsel for Smith as to this limited issue.

A separate Order follows, consistent with this Memorandum.


Date: July 24, 2015                      _____/s/_____
                                         Ellen Lipton Hollander
                                         United States District Judge